**James MARROW, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 89–1034.**

District of Columbia Court of Appeals.

Argued Sept. 11, 1990.
Decided June 13, 1991.

Richard E. Holliday, Jr., Washington, D.C., for appellant.

John R. Fisher, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Nancy J. Woodward, Asst. U.S. Atty., were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and FERREN and TERRY, Associate Judges.

FERREN, Associate Judge:

Appellant challenges the trial court's denial of his motion to dismiss a misdemeanor charge for lack of jurisdiction or, in the alternative, to transfer the charge to the Family Division. On February 6, 1989, appellant was arrested on a misdemeanor cocaine possession charge, D.C.Code § 33–541(d) (1988). On the same day he was also arrested—pursuant to an outstanding warrant—on a felony charge of assault with intent to murder while armed, D.C.Code §§ 22–503, –3202 (1989).[1] Appellant, a 17–year–old, argues that the Criminal Division does not have jurisdiction over his misdemeanor charge because, at the time of his arrest for cocaine possession, he was still a juvenile, subject to Family Division jurisdiction, despite the February 1, 1989, warrant for his arrest on the felony charge for which he would be triable as an adult.

According to D.C.Code § 16–2301(3)(A)(i) (1989), once the United States Attorney has "charged" a defendant "who is sixteen years of age or older" with assault with intent to murder while armed, that defendant must be prosecuted as an adult for the charged felony and for all "subsequent delinquent act[s]." D.C.Code § 16–2307(h)

(1989). The trial court ruled that the misdemeanor possession charge constituted a "subsequent delinquent act" within the meaning of § 16–2307(h). Specifically, the court concluded, "based on the outstanding felony warrant dated February 1st, 1989, that there had been a complaint lodged" against appellant before he allegedly committed the misdemeanor offense on February 6, 1989. Appellant argues that the date of presentment in court, February 7, 1989, not the date of issuing the warrant, February 1, 1989, is the crucial time for § 16–2307(h) purposes. He accordingly argues that because both the felony and the misdemeanor cases were presented in court the same day—the day after he was arrested on both charges—the misdemeanor cannot constitute a "subsequent delinquent act."

We agree with the trial court that the date on which appellant was "charged by the United States attorney" with the felony, *see* D.C.Code § 16–2301(3)(A) (1989), was the date on which the judge signed and filed the arrest "warrant" based upon a criminal "complaint" signed by a police officer and a supporting "affidavit" signed by the police officer and "approved" by an Assistant United States Attorney who has designated the felony to be charged. *See* Super.Ct.Crim.R. 4(a).[2] For statutory pur-

1. Appellant was convicted of the felony, which is not a subject of this appeal.

2. The first step in a prosecution when the government seeks an arrest warrant is the preparation of a "complaint" and an "affidavit" in support of an arrest warrant. *See* Super.Ct. Crim.R. 4(a). In this case the complaint was signed by a police officer whose signature was attested by a judge. The affidavit, which was a separate sheet attached to the complaint, was signed by the police officer, signed and "approved" by an Assistant United States Attorney, and attested by a judge. Below the complaint on the same form was the application for a "warrant" which named the defendant and specified the charge designated by an Assistant United States Attorney. Upon finding probable cause based on the affidavit, the judge signed the "warrant" portion of the form commanding "The United States Marshal or any other authorized federal officer or the Chief of Police of the District of Columbia" to bring the defendant to court. The complaint, affidavit, and warrant then presumably were filed in the warrant of-

fice in the Special Proceedings Branch of the Criminal Division of the Clerk of the Superior Court. After the police officer arrested the defendant, the officer signed and dated a "return" on the "warrant" portion of the complaint form.

According to Super.Ct.Crim.R. 4(a), an arrest warrant may be issued to a police officer without approval of the United States Attorney upon a showing of "good cause." *Id.* More specifically, the last sentence of Rule 4(a) provides:

Except for good cause shown by specific statements appearing in the complaint or in an affidavit filed with the complaint, no warrant shall be issued unless the complaint has been approved by an appropriate prosecutor.

For purposes of initiating a prosecution under D.C.Code § 16–2301(3)(A) (1989), the language of the statute makes clear that the felony complaint must have been approved by the office of the United States Attorney. The "good cause" exception permitted under Super.Ct.Crim.R. 4(a) cannot affect that requirement; thus, any warrant issued upon a complaint and affidavit signed by a police officer, without approval "by

poses the "charge" was filed before the date appellant was presented in court. We therefore affirm the trial court's order and remand the case to the Criminal Division for trial.

## I.

On February 1, 1989, the court issued a warrant for the arrest of appellant—who was then seventeen years old[3]—for an assault with intent to commit murder while armed, allegedly committed on January 19, 1989. More specifically, the warrant was issued on the basis of a "complaint" and an "affidavit in support of an arrest warrant," see *supra* note 2, signed and approved on February 1, respectively, by Metropolitan Police Officer Lorren D. Leadmon and Assistant United States Attorney Sherri L. Berthrong. On the application for an arrest warrant at the bottom of the complaint form, see *supra* note 2, Ms. Berthrong had designated the charge of assault with intent to murder while armed. Judge Kramer signed the application, which commanded any authorized federal or local officer to bring the defendant before the court to answer the designated charge. Five days later, on February 6, 1989, appellant was arrested for possession of cocaine, an offense allegedly committed that same day. The next day, February 7, he was arraigned on the misdemeanor and presented on the felony in the Criminal Division. On August 22, 1989, Judge Dixon denied appellant's motion to dismiss the misdemeanor charge for lack of jurisdiction. Appellant filed a timely appeal two days later.[4]

## II.

In general, the Family Division has jurisdiction over a juvenile who meets the statutory definition of a "child" under D.C.Code § 16–2301(3) (1989). *See* D.C.Code §§ 16–2302, –2303 (1989). "Child" is defined as:

an individual who is under 18 years of age, except that the term "child" *does not include* an individual who is sixteen years of age or older and—

(A) *charged by the United States attorney* with (i) murder, forcible rape, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense....

D.C.Code § 16–2301(3)(A)(i) (1989) (emphasis added). We have stated "that § 16–2301(3)(A), by deeming an individual not to be a 'child' when certain serious offenses are *charged*, in effect has decreed, by operation of law, a 'transfer' of that individual to the Criminal Division...." *In re C.S.*, 384 A.2d 407, 409 (D.C.1977) (emphasis added). Thus, we have equated the point at which "transfer" occurs (for juveniles age sixteen or over) with the point at which the individual is properly "charged" with one of the enumerated serious offenses. That definition is important for purposes of § 16–2307(h), which provides that "[t]ransfer of a child for criminal prosecution terminates the jurisdiction of the [Family] Division over the child with respect to any subsequent delinquent act...." D.C.Code § 16–2307(h) (1989).

an appropriate prosecutor," *id.*, cannot serve as the basis for a "charge" cognizable under § 16–2301(3)(A).

In this case, the complaint, affidavit, and application for a warrant were signed by all the required parties on February 1, 1989 and apparently filed in the warrant office the same day. We do not decide what the critical date would be when the warrant for a crime "charged by the United States attorney," D.C.Code § 16–2301(3)(A) (1989), is signed by the judge or filed in the warrant office on a day later than the one on which the police officer and Assistant United States Attorney signed the complaint, affidavit, and warrant application. For purposes of analysis in this opinion we note that all required signing occurred the same day, February 1, 1989. Moreover, we assume—absent any

contention to the contrary—that all documents were filed in the warrant office in the ordinary course of business on February 1, 1989.

**3.** The record contains a birth certificate with June 12, 1971 listed as the date of birth. The child's name on the birth certificate is "James Quick," later amended to "James S. Quick, Jr." Appellant's mother, Eleanor Braithwaite, appeared at a status hearing and stated that appellant's real name is James Quick and, as far as we can tell, the fact that the birth certificate belongs to appellant is uncontested.

**4.** An order denying a motion to transfer a case from the Criminal Division to the Family Division is appealable as a final order. *See Choco v. United States*, 383 A.2d 333, 334–35 (D.C.1978).

As a result, the Criminal Division—not the Family Division—would have jurisdiction over Marrow's subsequent misdemeanor cocaine possession charge.[5]

The question in this case, then, is when was appellant "charged by the United States attorney" with the felony of assault with intent to murder while armed: (1) when the criminal complaint, affidavit (showing the "charge" designated and "approved" by an Assistant United States Attorney), and warrant (based on probable cause) were signed by the judge and filed in the warrant office, see *supra* note 2, or (2) when appellant was actually presented in court after arrest? Appellant argues for the latter interpretation. More precisely, appellant argues that because he was not "charged" with the felony until his assault case was presented in Superior Court on February 7, his misdemeanor cocaine offense and arrest of February 6 cannot be considered a "subsequent delinquent act."

Appellant cites *In re M.R.*, 525 A.2d 614 (D.C.1987) (per curiam), to support this proposition. We find no such support in *M.R.* To the contrary, our discussion of when M.R. was criminally charged as a adult did not mention the dates on which M.R. had been arrested or his case had been presented in Superior Court.[6] Thus, *M.R.* provides no basis for claiming such dates have relevance.

Appellant's reliance on the time of presentment as the triggering event under § 16–2301(3)(A) for subsequent delinquent acts appears to be rooted not in any statute but in (1) a concern that the accused receive notice at an adversarial hearing of the criminal charge before subsequent acts can be treated as criminal acts, and (2) a concern that the government sufficiently examine its decision to prosecute before criminal jurisdiction automatically attaches to subsequent acts. Both concerns, while they may not be insubstantial, are without statutory foundation in determining the time of the United States Attorney's "charge."

As to notice, we find nothing in the statute or legislative history that suggests notice must be given at a hearing. The process of obtaining an arrest warrant—which includes a judge's approval of charges designated by the United States Attorney and the filing of the complaint, supporting affidavit, and warrant in the warrant office, see *supra* note 2—assures that a decision to charge has been made by the United States Attorney, based on probable cause, and that it is a matter of court record.[7] Moreover, the United States Court of Appeals for the District of Columbia Circuit explicitly rejected the argument that due process requires a hearing before the prosecutor initiates the automatic jurisdictional transfer provisions of § 16–2301(3)(A). *United States v. Bland*, 153 U.S.App.D.C. 254, 262, 472 F.2d 1329, 1337 (1972), *cert.*

5. We do not address the question whether Family Division jurisdiction is restored under D.C. Code § 16–2307(h) (1989) when a defendant is arrested and presented in court first on an adult charge and then on a later-charged juvenile offense; the defendant is then indicted as an adult on the juvenile offense; and then the original adult charge is dismissed.

6. In *M.R.*, appellant sought to dismiss a juvenile delinquency proceeding for lack of jurisdiction, claiming that the Family Division "ceased to have jurisdiction after adult criminal charges had been filed against [appellant] for events which occurred before the events which were involved in the juvenile delinquency proceeding." 525 A.2d at 614. We concluded that the answer depended on whether the criminal charges had been filed before or after the juvenile charges, without regard to the respective dates on which the charged criminal and delin-

quent acts took place. Accordingly, we sustained Family Division jurisdiction over a delinquency charge filed March 2, 1984 for a purse snatching which had occurred on February 24, 1984, even though a judicially-approved warrant containing a "charge" designated by the United States Attorney had been filed with the warrant office on March 16, 1984 for an armed robbery which had occurred on February 22, 1984.

7. Apparently, judicially approved applications for arrest warrants are filed in the warrant office under seal and thus do not provide notice of criminal charges until a defendant is arrested pursuant to a warrant. *See* D.C.Code § 1–1524(a)(3)(A) (1987) (exemption from Freedom of Information Act for "[i]nvestigatory records compiled for law-enforcement purposes," disclosure of which would "[i]nterfere with enforcement proceedings").

*denied,* 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973).

Similarly, we find nothing in the statute to suggest that more than probable cause —*i.e.,* what the United States Attorney must show in the complaint and supporting affidavit to obtain an arrest warrant—is necessary to initiate the charging process and automatic jurisdictional transfer under § 16–2301(3)(A). Rather, the statute simply leaves the decision to "charge" to the United States Attorney, just as prosecutors have traditionally been left to decide what to charge and when to press for initiation of the arrest process.

Although neither the statute nor its legislative history [8] expressly provides a definition of the phrase "charged by the United States attorney," we believe the plain reading of the phrase makes clear that an individual is "charged" with one of the enumerated offenses under § 16–2301(3)(A) when a criminal complaint, affidavit in support of an arrest warrant approved by an Assistant United States Attorney, and warrant showing a felony "charge" designated by an Assistant United States Attorney are signed by a judge and filed in the warrant office. See *supra* note 2.[9] Any delinquent act thereafter is a "subsequent delinquent act" for purposes of § 16–2307(h).

This definition is consistent with the purpose underlying § 16–2301(3)(A). As we have noted in earlier decisions, the intent of Congress in enacting this provision of the 1970 District of Columbia Court Reorganization Act was "to work a substantive contraction of the Juvenile Court's earlier jurisdiction." *Pendergrast v. United States,* 332 A.2d 919, 923 (D.C.1975). The House report stressed that its goal was to provide "a better mechanism for separation of the violent youthful offender and recidivist from the rest of the juvenile community." H.R. REP. No. 907, 91st Cong., 2d Sess. 50 (1970). *See also In re C.S.,* 384 A.2d at 410; *Pendergrast,* 332 A.2d at 923. Congress accomplished this purpose by placing broad "charging" discretion in the hands of the United States Attorney under § 16–2301(3)(A). We have recognized this, for instance, when we noted that the transfer statute reflects "the intention of Congress that jurisdiction over a 16– or 17–year–old juvenile *charged* [by the Corporation Counsel] with one of the specified offenses is not to be exercised in the Family Division unless the United States Attorney elects not to *charge* such an accused as an adult." *Pendergrast,* 332 A.2d at 923 (emphasis added). Similarly, we have stated that "[t]he United States Attorney has discretion under § 16–3201(3)(A) not to bring criminal *charges* against a 16– or 17–year-old youth. . . ." *In re C.S.,* 384 A.2d at 411 n. 7 (emphasis added). While not precisely defining the term "charged," it is obvious from context that we did not take "charged" to mean the discretion to arrest and present but, rather, the discretion to decide what offenses to specify in the application for a warrant. *See* Super.Ct.Crim.R. 4 (issuance of warrant based on complaint and affidavit showing probable cause). Nothing in our previous decisions suggests otherwise.

Moreover, the United States Court of Appeals for the District of Columbia Circuit, in upholding § 16–2301(3)(A) against a due process challenge, specifically stated "that the exercise of the discretion vested

---

**8.** *See* S.REP. No. 2981, 91st Cong., 1st Sess. (1969); H.R.REP. No. 907, 91st Cong., 2d Sess. (1970). Dissenters to the Report of the House Committee on the District of Columbia on this bill noted, however, that "[t]he Committee bill would exclude altogether from juvenile court jurisdiction any child 16 or older *simply accused* by the United States Attorney of a serious crime . . ." H.R.REP. No. 907, 91st Cong., 2d Sess. 208 (1970) (emphasis added).

**9.** Our interpretation of the phrase "charged by the United States attorney" should not be confused with interpretation of the term "charged" when used in other contexts. The Sixth Amendment right to counsel, for instance, attaches "at or after the initiation of adversary judicial proceedings—whether by way of formal *charge,* preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (emphasis added). However, the constitutional right to counsel at all critical stages of a prosecution reflects different policy goals from those involved in triggering the automatic transfer of jurisdiction from the Family Division to the Criminal Division, *see infra,* and thus does not inform our decision here.

by Section 2301(3)(A) in the United States Attorney to *charge* a person 16 years of age or older with certain enumerated offenses ... initiat[es] that person's prosecution as an adult." *Bland,* 153 U.S.App. D.C. at 260, 472 F.2d at 1335 (emphasis added). The court went on to note that § 16–2301(3)(A) embodies the concept of prosecutorial discretion, *id.,* and squarely rejected the argument "that due process requires an adversary hearing before the prosecutor can exercise his age-old function of deciding what *charge* to bring against whom." 153 U.S.App.D.C. at 262, 472 F.2d at 1336–37 (emphasis added). This decision leaves no doubt that "charged" for purposes of § 16–2301(3)(A) is a function of the United States Attorney's prosecutorial discretion which, under constitutional principles of separation of powers, is rarely subject to judicial review. 153 U.S.App. D.C. at 260–61, 472 F.2d at 1335–36.

Appellant's reading of "charged" to require arrest and presentment would work a major change in case law and statutory language. We decline to follow this suggestion. We hold, rather, that an individual is "charged" under § 16–2301(3)(A) once a judge has signed and filed an arrest warrant in the warrant office based on probable cause derived from a complaint and supporting affidavit signed by a police officer and approved by an Assistant United States Attorney who has designated on the affidavit and the warrant one of the felony offenses enumerated in § 16–2301(3)(A). See *supra* note 2. Thus, Marrow's delinquent cocaine possession act—an act committed after a judicially-approved warrant commanding his arrest for an enumerated offense—was a "subsequent delinquent act" for purposes of § 16–2307(h) and must be submitted for trial to the Criminal Court's jurisdiction.

Accordingly, Judge Dixon's order that the Criminal Division has jurisdiction over appellant's misdemeanor charge of possession of cocaine is affirmed, and the case is remanded for trial.

*So ordered.*

ROGERS, Chief Judge, concurring:

I join the majority opinion in its holding that a child is

> charged [by the United States Attorney under D.C.Code] § 16–2301(3)(A) once a judge has signed and filed an arrest warrant in the warrant office based on probable cause derived from a complaint and supporting affidavit signed by a police officer and approved by an Assistant United States Attorney who has designated on the affidavit and the warrant one of the felony offenses enumerated in § 16–2301(3)(A).

Majority opinion at [1047]. Under our opinion in *In re C.S.,* 384 A.2d 407 (D.C.1977), appellant is subject to prosecution as an adult for the subsequent drug offense. Therefore, I must also concur in the affirmance of the judgment. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

I write separately, however, because I am persuaded that our opinion in *C.S.* is contrary to the statutory scheme for the prosecution of subsequent delinquent acts under D.C.Code § 16–2307(h). Linking "all the consequences" that flow from a judicial transfer decision under D.C.Code § 16–2307(d)[1] to a transfer under § 16–2301(3)(A) by action of the United States Attorney in charging an enumerated offense,[2] *see C.S., supra,* 384 A.2d at 411, is contrary to the language of the statute and the clear, uncontroverted legislative history that Congress intended for a child

---

1. The judicial transfer provisions are limited to a child age 15 or more alleged to have committed a felony, or age 16 or more and previously adjudicated a delinquent, or age 18 or older alleged to have committed a delinquent act prior to becoming age 18. D.C.Code § 16–2307(a)(1), (2), & (3) (1989).

2. The enumerated offenses are murder, forcible rape, burglary in the first degree, robbery while armed, or assault with intent to commit any

such offense, "and any other offense properly joinable with such an offense." D.C.Code § 16–2301(3)(A). A "child" also does not include a person charged with an offense listed in subpart (A) and convicted by plea or verdict of a lesser included offense, § 16–2301(3)(B), or a person charged with a traffic offense. § 16–2301(3)(C). Congress also authorized a child under age 18 to be prosecuted as an adult for a traffic offense. D.C.Code § 16–2301(3)(C).

under age 18 to be subject to the jurisdiction of the Family Division unless a judge had determined, after a hearing, that there were no reasonable prospects for rehabilitating the child before his majority. D.C. Code § 16–2307(d). The only exception that Congress authorized was for a child charged by the United States Attorney with certain violent offenses, D.C.Code § 16–2301(3)(A); in that event, the child would be prosecuted as an adult on that charge. Nothing in the plain language of the statute or the legislative history suggests, as the court concluded in *C.S.*, that a subsequent delinquent act of such a child was to be prosecuted as an adult criminal offense in the absence of a judicial transfer proceeding. The seriousness of the court's interpretation in *C.S.* is underscored by the fact that the transfer provision of the D.C. Court Reform and Criminal Procedure Act of 1970 closely followed the decision in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), which held that a transfer of a juvenile for prosecution as an adult must accord with due process of law.

The District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473, 523, provides that a child under the age of 18 at the time of an alleged criminal offense is entitled to the protections of the juvenile justice system subject to two exceptions relevant to this appeal. First, under D.C.Code § 16–2301(3)(A), a "child" is defined to exclude persons between the ages of 16 and 18, who would otherwise be entitled to the protections of the juvenile justice system, who has been charged by the United States Attorney with an enumerated offense. Such a child, as a result of the prosecutor's decision to charge an enumerated offense, is automatically transferred from the Family to the Criminal Division for prosecution on that charge. Second, the statute provides for the judicial transfer of certain children, on motion of the Corporation Counsel following consultation with the Director of Social Services. D.C.Code § 16–2307. A judge may order transfer of

jurisdiction over the child from the Family to the Criminal Division only after a hearing at which the child is represented by counsel, and consideration of reports and factors spelled out in the statute. The judge must find that there are no "reasonable prospects for rehabilitating a child prior to his majority." *Id.* § 16–2307(d). Restoration of Family Division jurisdiction over a child who is judicially transferred is nevertheless required, however, under certain conditions. Subsection (h) of § 16–2307 provides that:

> Transfer of a child for criminal prosecution terminates the jurisdiction of the [Family] Division *over the child* with respect to any subsequent delinquent act; except that jurisdiction of the [Family] Division over the child is restored if (1) the criminal prosecution is terminated other than by a plea of guilty, a verdict of guilty, or a verdict of not guilty by reason of insanity, and (2) at the time of the termination of the criminal prosecution no indictment or information has been filed for criminal prosecution for an offense alleged to have been committed by the child subsequent to transfer. [Emphasis added.]

The only reason appellant faces adult prosecution in the Criminal Division for the drug offense is because it is considered a "subsequent delinquent act" under the reasoning of *C.S.*[3] In *C.S.*, *supra*, 384 A.2d at 407, that the court held that "once an individual who is sixteen years of age or older has been charged by the United States Attorney with a crime pursuant to D.C. Code 1973, § 16–2301(3)(A), then that individual shall be deemed transferred for criminal prosecution within the meaning of § 16–2307(h), with the resulting termination of Family Division jurisdiction (subject to restoration as prescribed)." 384 A.2d at 411 (footnote omitted). The court reached this conclusion on the basis of its view that Congress "must have intended to incorporate into § 16–2301(3)(A) all the consequences of a jurisdictional 'transfer' from Family to Criminal Division that are

---

3. The drug charge is not an enumerated offense under § 16–2301(3)(A), and appellant has never

been transferred by court order under § 16–2307.

set forth in § 16–2307(h)." *Id.* The court explained:

> If discretionary [judicial] "transfer of a child for criminal prosecution," § 16–2307(h), automatically means that the Family Division loses jurisdiction over all "subsequent delinquent acts" of that child (subject to restoration of jurisdiction under certain circumstances not relevant here), there is no reason to believe that Congress intended to *assure* criminal prosecution of certain violent youthful offenders by virtue of § 16–2301(3)(A) and yet *retain* Family Division jurisdiction over their subsequent delinquent acts. Section 16–2307 provides for the judicial determination of suitability for adult criminal treatment, whereas § 16–2301(3)(A) is an effective legislative determination of such suitability. Because in either case the same substantive determination has been made, we conclude that Congress intended identical treatment of subsequent delinquent acts.

*Id.* at 411 (emphasis in original).

In reaching this conclusion, the court in *C.S.* viewed as not particularly relevant a statement by Senator Tydings that prosecution as an adult upon being charged by the United States Attorney "has no bearing on [a child's] trial on subsequent charges, even if he is convicted." *Id.* at 410 n. 3. Rather, the court decided as "a matter of logic," *id.* at 410, that in view of "the overriding concern of Congress … to remove both the first time 'violent youth offender and the recidivist' (age 16 and older) from the juvenile treatment system altogether—a measure designed primarily to protect 'the rest of the juvenile community' in detention," *id.* at 411, that all of § 16–2307(h)'s consequences applied to juveniles in the Criminal Division by virtue of being charged by the United States Attorney under § 16–2301(3)(A). In rejecting the government's view, which relied on the Senate Managers' statement on the intent of Congress regarding subsequent delin-

quent acts by a child prosecuted as an adult pursuant to § 16–2301(3)(A), the court in *C.S.* placed emphasis on the House Report pointing to the intended contraction of juvenile jurisdiction. The court also emphasized the absence of floor debate or additional commentary in the Conference Report, which presumably would have supplemented Senator Tydings' quotation of the Senate Managers' statement, noting, by contrast, the intense debate in both houses on the definition of child and judicial transfer provisions. *Id.* at 410–411. There are serious flaws in this reasoning.

First, the plain language of the statute does not support the linkage of the two different transfer mechanisms for purposes of the treatment of subsequent delinquent acts. *See Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc) ("[T]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used.") (quoting *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897)). The statute is specific about *the offenses* that the United States Attorney may charge and does not refer to, much less authorize, the adult prosecution of subsequent delinquent acts in the absence of a judicial transfer of *the child* under § 16–2307. The statute is also explicit about the procedures that must be followed and the judicial finding that must be made before a judge may transfer jurisdiction over a child from the Family Division to the Criminal Division of the Superior Court. Only then does the statute authorize adult prosecution of subsequent delinquent acts, and even then the statute provides for restoration of Family Division jurisdiction of such a child if the offense underlying the judicial transfer is disposed of favorably to the child and in the meantime the child has not been charged by information or indictment as a result of a subsequent delinquent offense.[4]

---

4. The exceptions in the restoration provision of § 16–2307(h), were, according to the Senate Report, part of the tempered logic in the bill re-

ported by the Committee. The Senate Report states:

> In the opinion of the committee, Family Division jurisdiction must be restored where the

Second, Senator Tydings's statement that being prosecuted as an adult upon being charged by the United States Attorney "has no bearing on [a child's] trial on subsequent charges" is definitive evidence of legislative intent. Speaking on the Senate Floor following the Senate–House Conference, Senator Tydings, the chairman of the Senate District of Columbia Committee, stated:

> Under the House version ... a juvenile once transferred [under the *ad hoc* procedure in § 16–2307 (judicial transfer)] was thereafter to be excluded from the juvenile system even if the charge proved at trial in the Criminal Division to be unfounded. The Senate conferees urged successfully that if the grounds for transfer prove to be without foundation, then logically and in all fairness Family Division jurisdiction must be restored; and any subsequent case against the child must be brought in the juvenile court (Family Division).
>
> It bears mentioning that the latter concept in the conference substitute is intended to operate *even more completely* in cases shifted to the criminal court by the operations of the new definition of "child." If a 16 year old is charged with armed robbery, he is to be tried in the Criminal Division. But trial once in the Criminal Division has no bearing on his trial on subsequent charges, even if he is convicted. So, for example, were a 16 year old first offender armed bank robber to receive a suspended sentence only to be subsequently charged with a later unrelated purse-snatching, he would nevertheless be tried in the Family Divi-

sion unless specially ordered by the court to be transferred.

*C.S., supra,* 384 A.2d at 410 n. 3 (quoting 116 CONG.REC. 24346 (1970) (emphasis added in the second paragraph)). In *C.S.* the court dismissed this statement as the view of one senator. *Id.* at 410. In fact, Senator Tydings was quoting directly from the Statement of the Managers on the part of the Senate Submitted Regarding the Conference Action Upon S. 2601, the President's Crime Legislation for the District of Columbia, July 15, 1970 (Committee Print, 91st Cong., 2d Sess.). The Managers' Statement was prepared as a definitive statement on the meaning of the provisions of the Conference agreement, to respond to misconceptions about the bill reported by the Senate–House Conferees. 116 CONG. REC. S11942 (daily ed. July 22, 1970) (Senator Tydings describes Senate Managers' Statement as the "official explanation" of the legislation's content). Since the Conference agreement was enacted into law, the Managers' Statement interpreting its provisions must be viewed as definitive evidence of legislative intent.

Third, the House Report reflected views which were modified in the Senate–House Conference agreement. The court in *C.S.* relied on the statement in the House Report that

> Because of the great increase in the number of serious felonies committed by juveniles and because of the substantial difficulties in transferring juvenile offenders charged with serious felonies to the jurisdiction of the adult court under present law, provisions are made in this subchapter for a better mechanism for

---

basis for the transfer has been invalidated. The Committee recognized that the ultimate finding, regarding the reasonable prospects of rehabilitation, consists of a prediction as to the nature of the child's social character at the time of disposition. So too, the committee recognized that of great relevance [sic] to this prediction is the nature of the misconduct, which, at the time of any dispositional hearing, the child will have been found to have committed. Yet, in the committee's opinion, it follows logically—from the fact that the transfer finding amounts to a prediction and from the assumption in that prediction that the child has committed the acts alleged—that

a child who is found *not* to have committed the acts may well *not* suffer from the lesser prospects of rehabilitation predicted, and ought to be returned to the juvenile system.

The provision, that criminal charges based on misconduct subsequent to transfer bar the restoration of Family Division jurisdiction, simply constitutes a tempering of the logic just described. This tempering is justifiable in that the nature of the pending charge is only one of several factors to be considered at the transfer hearing, and as an accommodation of the demands of administrative ease. S.REP. No. 620, 91st Cong., 1st Sess. 12 (1969) (emphasis in original).

separation of the violent youthful offender and the recidivist from the rest of the juvenile community.

*C.S. supra,* 384 A.2d at 410 (quoting H.R. REP. No. 907, 91st Cong., 2d Sess. 50 (1970)). The court also referred to dictum in *Pendergrast v. United States,* 332 A.2d 919, 923 (D.C.1975), in which the language quoted from the House Report was viewed as conveying Congress' intention permanently to transfer for adult prosecution a child charged with an enumerated offense. *Id.* What the court appears to have overlooked is the fact that the bill passed by Congress adopted the Conference Report which included the provisions regarding subsequent delinquent acts described in the Senate Managers' statement. The Senate Managers' statement was consistent with the compromise adopted by the Conferees, and ultimately the Congress, to follow the House lead on the charging authority of the United States Attorney as to certain violent offenses and to adopt the Senate view on the treatment of subsequent delinquent acts. *C.S., supra,* 384 A.2d at 409. While the court in *C.S.* acknowledged this compromise, *see id.,* it gave no weight to the plain language of Senate Managers' statement regarding subsequent delinquent acts.

Furthermore, the Senate Managers' statement is fully consistent with the statement in the House Report, on which the court relied in *C.S.,* that juvenile jurisdiction was narrowed by "a better mechanism for separation of the violent youthful offender and the recidivist from the rest of the juvenile community." *Id.* at 410–11 (citing H.R.REP. No. 907, 91st Cong., 2d Sess. 50 (1970)). *See Logan v. United States,* 483 A.2d 664, 673–74 (D.C.1984) (compromise between House and Senate bills adopted by Conferees "greatly reduce[d] the number of cases which the House bill would have automatically transferred to the adult court for trial.") (quot-

ing CONG.REC. S11384). That mechanism, as the House Report makes clear, involved two provisions, one for automatic transfer upon the United States Attorney's charge of an enumerated offense and a second for judicial transfer proceedings. H.R.REP. No. 907, 91st Cong., 2d Sess. 50, 148–49, 151 (1970). Nothing in the legislative history of the Conference Report contradicts the conclusion that the transfer mechanisms were to be entirely separate. Thus, language extending Criminal Division jurisdiction to subsequent delinquent acts was included in the provision regarding individualized judicial transfers, while no such language was included in the automatic enumerated-offense transfer provision.

Fourth, there was debate on the Conference Report which supported Senator Tydings' expression of legislative intent. The court in *C.S.* overlooked Senator Tydings' direct response to the misleading assertion by a colleague during debate on the Conference agreement that transfer by action of the United States Attorney was irrevocable under the bill adopted by the Conferees.[5] 116 CONG.REC. S11757, S11760 (chart) (daily ed. July 20, 1970). This assertion was directly met by Senator Tydings' response that transfers by action of the United States Attorney were not irrevocable under the Conference agreement because "Juvenile Court jurisdiction is retained as to any other subsequent offense, even if the juvenile is found guilty of the original charge which led to the automatic transfer." 116 CONG.REC. S11943. In addition, the debate on the Conference agreement was directed, insofar as relevant here, to maintaining broad juvenile court jurisdiction for persons under age 18, and directly refutes the conclusion that the bill ultimately adopted by Congress sought to increase the exposure of persons under age 18 to prosecution as adults beyond the express language of the statutory provisions.[6]

---

**5.** Not joining the Senate Managers' statement were Senators Eagleton, Goodell and Mathias, whose views in opposition to the bill reported by the Senate–House Conferees were directed at broader issues in the bill as well as opposition to any lowering of the juvenile age from 18 to

16 years of age. 116 CONG.REC. 11745, 11754, 11756–60 (daily ed. July 20, 1970).

**6.** *See, e.g.,* 116 CONG.REC. S11745, S11754, S11756–57, S11759 (daily ed. July 20, 1970); *see also* S.REP. No. 620, 91st Cong. 1st Sess. 8 (1969).

Neither party has cited, and I have not found, any indication in the legislative history that "all the consequences" of a judicial transfer under § 16–2307 were intended to apply to the subsequent delinquent acts of a child who is automatically transferred by the United States Attorney for adult prosecution for an enumerated offense under § 16–2301(3)(A). In fact, as noted elsewhere in this opinion, all indications are to the contrary. *See generally* Mary C. Lawton, *Juvenile Proceedings— The New Look,* 20 AMER.UNIV.L.REV. 342 (1971) (Lawton) (discussing the juvenile provisions of the District of Columbia Court Reform Act). Therefore, neither the language of the statute nor the legislative history support the court's conclusion in *C.S., supra,* that Congress intended that a child automatically transferred for an enumerated offense under § 16–2301(3)(A) would be subject to adult prosecution for subsequent delinquent acts (except as provided in § 16–2307(h)).[7]

In other words, when the juvenile provisions of the District of Columbia Court Reform Act are read as a whole, the statutory scheme is clear. Congress vested broad discretion in the United States Attorney to prosecute enumerated offenses committed by persons between 16 and 18 years of age in an adult prosecution. Congress also favored the transfer of jurisdiction over certain juveniles on motion of the Corporation Counsel after a determination by a judge that there were no "reasonable prospects for rehabilitating the child prior to

his majority." In such cases, Congress further provided that Family Division jurisdiction would be restored if the transfer offense was concluded favorably to the child and, in the interim, an information or indictment had not been filed with respect to a delinquent offense occurring after the transfer. But Congress did not also provide that in the absence of a judicial transfer pursuant to § 16–2307, a child would be subject to prosecution as an adult for non-enumerated offenses which the United States Attorney did not have discretion to charge.

The linkage of § 16–2301(3)(A) and § 16–2307(h) by the court in *C.S.,* is, thus, contrary to the statutory scheme and clear legislative intent, and overturns the presumption of juvenile treatment for persons under age 18.[8] *See United States v. Tucker,* 407 A.2d 1067, 1070 (D.C.1979) ("in view of rehabilitative purposes of our juvenile justice system, D.C.Code 1973 § 16–2301(3) should be strictly construed against the prosecution and in favor of the person being proceeded against"). Instead of accepting the evidence that Congress did not intend generally to lower the age of juvenile jurisdiction, but only to carve out exceptions for those charged with enumerated offenses by the United States Attorney and those whom a judge had determined did not offer reasonable prospects for rehabilitation under the juvenile justice system, the *C.S.* court accomplished what opponents to the Conference agreement bill feared and

7. Under *C.S.,* if the United States Attorney discovers that the juvenile charged is not the person who committed the charged offense— whether because misidentification, an alibi, or other circumstance renders impossible the further prosecution of the enumerated offense—the juvenile is nevertheless subject to prosecution as an adult for subsequent offenses not enumerated in § 16–2301(3)(A) unless the restoration provision of § 16–2307(h) kicks in. There is no suggestion in the language of the statute or the legislative history that this is what Congress intended.

   Nor is there an indication that the Congress was more concerned with administrative efficiency in the processing of cases than in the appropriate assignment of a child for juvenile or adult prosecution. While the statement by Senator Tydings indicates that the Senate Com-

mittee on the District of Columbia did make some accommodations to administrative concerns, by inclusion of the restoration exception in § 16–2307(h), there is nothing in the record to suggest that Congressional concern about administrative matters went further.

8. One explanation for the court's opinion is suggested in a footnote. In footnote 12, the court stated that it was compelled to render a decision under severe statutory time restrictions without the benefit of comprehensive briefing, citing D.C.Code § 16–2327(b) (1973). *Id.* at 412 n. 12. *See* D.C.Code § 16–2328(b) (1989) (time limits for interlocutory juvenile appeals). The opinion was originally issued as an unpublished memorandum opinion and judgment, "which, after additional research, [was] expanded in this published opinion." *Id.*

proponents of the bill said was not intended. In so doing, the resulting deprivation of significant statutory rights for a child who has not been determined to be without reasonable prospects of rehabilitation before his majority is contrary to the statute and due process.

In *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Supreme Court held that fundamental procedural due process is required where "critically important" action "determining vitally important statutory rights of the juvenile" are at stake. *Id.* at 556, 86 S.Ct. at 1055. Although *Kent* addressed the waiver-of-jurisdiction statute in existence prior to the District of Columbia Court Reform Act of 1970, the two means by which a person under 18 can be prosecuted as an adult under the Act—by § 16–2301(3)(A) and § 16–2307—result in the loss of the same type of important statutory rights at issue in *Kent.* In enacting the District of Columbia Court Reform Act, the legislative history indicates that Congress intended that juveniles be given their full due process rights.[9] Indeed, the House Report specifically referred to the then-recent decision of the Supreme Court in *Kent. See* H.R.REP. No. 907, 91st Cong., 2d Sess. 49, 53 (1970).

This court has acknowledged that, "[a]s the Supreme Court noted in addressing the precourt reorganization predecessor of § 16–2301(3), the decision whether an accused is subject to juvenile or adult court is a vitally important one which affects not only the length of confinement but many collateral interests such as the loss of civil rights, the use of an adjudication in subsequent proceedings and disqualification for public employment." *Tucker, supra,* 407 A.2d at 1071–72. Consequently, the loss of statutory rights to juvenile treatment of subsequent delinquent acts by a child automatically transferred under § 16–2301(3)(A) implicates the procedural due process rights required under *Kent, supra,* 383 U.S. 541, 86 S.Ct. 1045.[10] Accordingly, while Congress may define who is a child in a manner that is a legislatively reasonable classification, *Pendergrast, supra,* 332 A.2d at 923–24 (following *United States v. Bland,* 153 U.S.App.D.C. 254, 258–59, 472 F.2d 1329, 1333–34 (1972), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973)), and *Kent, supra,* does not mean that a reasonable legislative classification would run afoul of due process, *Kent* does mean that non-adult status to a child may not be denied without due process protections. 383 U.S. at 557, 86 S.Ct. at 1055.

Due only to the court's "logic" in *C.S.* is a child subject to continued adult prosecution when the child is neither a recidivist nor a person bereft of the prospects for rehabilitation; but for such "logic," a child who is not prosecuted as an adult for an enumerated offense pursuant to § 16–2301(3)(A) would not be deprived of the benefits of the juvenile justice system without a hearing and judicial determination under § 16–2307, which includes procedural safeguards of a juvenile's statutory rights. This interpretation of Congressional intent, in a manner that excludes appel-

---

**9.** The District of Columbia Court Reform Act, and its juvenile provisions, were written shortly after the Supreme Court decisions in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (due process requires certain procedural rights for juveniles faced with incarceration), *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt required in juvenile delinquency adjudications), and *Kent v. United States, supra,* (due process entitles juvenile to various procedural protections, including hearing, presence of counsel, and statement of reasons, before judicial transfer to adult court). The Senate Report stated that the juvenile provisions were written to provide juveniles with their due process of law. S.REP. No. 620, 91st Cong., 1st Sess. 1 (1969). *See generally* Lawton, *supra,* at 343 (noting need for code revision in view of recent landmark decisions by the United States Supreme Court extending constitutional protections to juveniles).

**10.** The rationale in *Bland, supra,* 153 U.S.App. D.C. at 259, 472 F.2d at 1334, that Congress was concerned with violent crimes by 16 and 17 years olds and recidivists, is inapplicable to non-violent subsequent delinquent acts as well as violent subsequent delinquent acts committed by a person under age 18 where the enumerated offense is disposed of favorably to the child automatically transferred under § 16–2301(3)(A).

lant from the juvenile justice system, is not a wholly irrational classification; Congress considered several formulations for the jurisdiction of the juvenile system in the course of debate on the District of Columbia Court Reform Act, and other jurisdictions define the jurisdiction of the juvenile system in a more restrictive manner. *See C.S. supra,* 384 A.2d at 412 n. 11 (referring to the statute in Rhode Island); *Bland, supra,* 153 U.S.App.D.C. at 259 & n. 19, 472 F.2d at 1334 & n. 19. But, since the statutory scheme and legislative history make clear that such linkage between § 16–2301(3)(A) and § 16–2307(h) is inconsistent with the statutory scheme, the due process issue is manifest.

In conclusion: Because the Division is bound by the court's prior decisions interpreting Congressional intent, *M.A.P. v. Ryan, supra,* 285 A.2d 310, I join the majority opinion in holding that the Criminal Division had jurisdiction of appellant Marrow's subsequent misdemeanor drug charge.