Lorenzo L. MOORE, Appellant,

v.

UNITED STATES, Appellee.

No. 83-1459.

District of Columbia Court of Appeals.
Argued Feb. 13, 1986.
Decided April 30, 1986.

Melvin M. Dildine, Washington, D.C., appointed by the court, for appellant.

David Howard Saffern, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Wendy Bebie, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and NEBEKER and STEADMAN, Associate Judges.

PER CURIAM:

After a jury trial, appellant was convicted of the armed robbery of McLoyd Cotten, D.C.Code § 22-2901 (1981), and of assaulting Collier Rowe with the intent to rob Cotten, D.C.Code § 22-501 (1981). Appellant raises two issues on appeal. First, appellant contends that the second count of the indictment, charging him with the assault of Rowe with the intent to rob Cotten

was fatally defective.[1] Second, appellant contends that the trial judge committed error by failing to impose a sanction against the government for its failure to comply with the Jencks Act, 18 U.S.C. § 3500 (1981). We affirm appellant's conviction.

## I

In the early morning of December 24, 1982, McLoyd Cotten, accompanied by two friends, Collier Rowe and Denise Beckwith, was driving along the 5700 block of East Capitol Street, S.E. Cotten heard something hit the car, so he stopped to inspect for damage. As Cotten and Rowe exited the vehicle, they noticed a group of six or seven men standing at the bus stop. Three of the men from the bus stop came toward Cotten and Rowe and told them to put their hands up. One of the three, Santonio Diggs, held a gun on Cotten, while appellant searched him.

While Cotten was being searched, Rowe began moving out into the street. Someone from the group called to Diggs to get Rowe back to the group. Diggs, holding a pistol, ran toward Rowe and ordered him back to the car. Diggs fired a shot at Rowe's feet and then Diggs returned to the car. Meanwhile, appellant continued his search of Cotten and removed his wallet and a watch. Suddenly, someone fired another shot which passed by Rowe's ear. Rowe returned to the group.

As soon as the robbers left, Cotten drove his two companions to the police station where they reported the robbery. Detective Leadmon prepared a report of the robbery. Realizing that the crime had just occurred, Leadmon discontinued the interview and drove the complainants to the crime scene to look for the robbery suspects. Detective Leadmon had a description of the suspects broadcasted on the police radio.

As Cotten, Rowe, and Beckwith were passing by 100 57th Street, S.E., in the police cruiser, they observed a group of men standing outside the house. Cotten and Rowe spotted Diggs, identifying him as the gunman. Appellant and Allen P. Mays, the third robbery suspect, were also standing outside the house. Cotten identified appellant as the one who had taken his property, while Rowe identified Mays.

## II

Appellant first contends that the charge of assaulting Rowe with the intent to rob Cotten is not permitted by D.C.Code § 22–501. He argues that § 22–501 requires that the person assaulted must be the same person the assailant intended to rob.

The government urges this court to adopt a more expansive reading of the statute. The government claims that the person who is assaulted need not be the same individual the assailant intended to rob. Rather, the statutory prohibition of § 22–501 includes the assault on any individual who is on the scene of an intended robbery when the assault is done in an effort to carry out the robbery.

Section 22–501 provides in relevant part:

> Every person convicted of any assault with intent to ... commit robbery, ... shall be sentenced to imprisonment for not less than 2 years or more than 15 years.

Neither the language of the statute nor its legislative history is dispositive in deciding which party's reading of the statute is more appropriate. The statute itself is broadly written and its legislative history does not address our question. While we are mindful of the maxim that penal stat-

---

1. Appellant's failure to submit a pretrial motion challenging the sufficiency of the indictment in accordance with Super.Ct.Crim.R. 12(b)(2) does not preclude our review of the issue. After the close of all the testimony, appellant's counsel challenged the sufficiency of the indictment, raising the same argument he advances here on appeal. Appellant's counsel also objected to the modification of the criminal jury instruction on assault with intent to rob which incorporated the government's interpretation of D.C.Code § 22–501.

utes should be strictly construed, we are not obliged to ignore common sense and evident statutory purpose in our effort to resolve the issue. *See, e.g.,* 3 SUTHERLAND STATUTORY CONSTRUCTION § 59.03–.06 (4th ed.1974).

The increased penalty attendant to an assault with intent to rob, as opposed to a simple assault, is reflective of a major statutory purpose, to punish an assailant whose criminal conduct potentially exposes the assault victim to a greater risk of harm because the assault is accompanied by an intent to commit another offense. In appellant's case, Rowe faced greater danger because he was with Cotten, the intended robbery victim. To hold that the person assaulted must be the same individual the assailant intended to rob, would disregard the many ways an assailant may effectuate his intended robbery.

To our knowledge, the Michigan Court of Appeals is the only jurisdiction that has addressed a similar issue involving its assault with intent to rob statute. *See People v. Harris,* 110 Mich.App. 636, 313 N.W.2d 354 (1981). In *Harris,* the Michigan court affirmed the appellant's conviction, holding that "the statute in question does not specify that 'the intent to rob' be directed at the person assaulted." *Id.* at 643, 313 N.W.2d at 359.

■ Giving the language of our statute its full meaning, it would be nonsensical to limit its scope to situations involving a single victim; particularly, where the assault on one victim is used to effectuate the robbery of another at the scene. We, therefore, hold that appellant was properly convicted of violating D.C.Code § 22–501.

### III

Appellant also challenges the trial court's refusal to invoke the Jencks Act and strike the portion of Officer Leadmon's testimony, which pertained to the original description of the robbery suspects, because Leadmon was unable to produce the handwritten notes that he made while interviewing the complainants. At trial, Lead-

mon testified that he threw away the handwritten notes but he had incorporated the notes into the typewritten offense report.

We assume, without deciding, that the lost notes are in fact Jencks material; particularly since the question was not raised at the trial level. Notwithstanding the trial judge's finding that the destruction of the notes was not negligent, we are cognizant of the Metropolitan Police Department rules that require the preservation of an officer's rough notes that contain the description of a crime suspect. *See* Metro. Police Gen. Order Series 601, No. 2 (effective May 26, 1972). We note, however, that appellant did not request the appropriate sanction. Under the Jencks Act, the sanction is directed toward the declarant of the statement, not the one who receives it. *Hardy v. United States,* 316 A.2d 867, 869–70 (D.C.1974). *See also Edwards v. United States,* 483 A.2d 682, 686–87 (D.C. 1984) (Rogers, J., dissenting).

■ In any event, the trial judge's ruling does not require reversal on this ground. The record shows that appellant was not prejudiced by the loss of the notes since he was able to impeach the victim's identification testimony with inconsistencies in the offense report. Moreover, the arrest of appellant was the result of an on-the-scene identification by the robbery victim which effectively eliminated any potential prejudice from the loss of the notes. Therefore, the conviction on appeal is

*Affirmed.*