546 A.2d 1041

**STATE of Maryland**

v.

**Timothy L. WILSON.**

**No. 134, Sept. Term, 1986.**

Court of Appeals of Maryland.

Sept. 13, 1988.

---

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Nancy L. Cook, Asst. Public Defender, Washington, D.C., for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE and ADKINS, JJ.

COLE, Judge.

The sole issue presented in this case is whether the doctrine of transferred intent[1] applies to the criminal offense of attempted first degree murder. We set forth the facts as they were revealed at the trial of Lawrence Wilson and Timothy Wilson (the Wilsons).

On March 10, 1985, the Wilsons became involved in a dispute with Marvin Brown, arising out of a basketball game in which Brown had injured a relative of the Wilsons. Brown fled the scene after the Wilsons threatened to pistol-whip him. Both Wilsons then withdrew handguns and fired multiple shots towards Brown, who escaped the bullets by

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Transferred intent is the common law doctrine which states that "'the state of mind which one has when about to commit a crime upon one person is considered by law to exist and to be equally applicable although the intended act affects another person.'" *Gladden v. State,* 273 Md. 383, 404, 330 A.2d 176, 188 (1974). *Accord, Grandison v. State,* 305 Md. 685, 506 A.2d 580 (1986).

various evasive maneuvers; unfortunately, one of the errant shots did hit Juan Kent, an innocent bystander. Kent survived, but suffered paralysis on one side and brain damage that left him unable to walk or speak.

The Wilsons were tried jointly before a jury in the Circuit Court for Baltimore City (Bothe, J., presiding). Both were convicted of handgun charges and two counts of attempted first degree murder, specifically, attempted murder of both Marvin Brown, the intended victim, and Juan Kent, the unintended victim. On appeal to the Court of Special Appeals Timothy Wilson (Wilson) challenged the validity of his conviction for the attempted murder of Juan Kent on the basis that he lacked the requisite intent and, further, that the doctrine of transferred intent was inapplicable to the crime of attempted murder. The intermediate appellate court, in an unreported opinion, agreed with Wilson and reversed his conviction for the attempted murder of Juan Kent. That court refused to apply the transferred intent doctrine, reasoning that:

> ... the doctrine of transferred intent has, to our knowledge, only been applied to crimes involving or requiring a general intent. The crime of attempted murder, on the other hand, requires a specific intent, namely the intent to kill a particular victim.... [Wilson] fired his handgun intending to kill Marvin Brown. Thus, while the evidence was clearly sufficient to convict the appellant[ ] for the attempted murder of Marvin Brown, it was likewise insufficient to convict [him] for the attempted murder of Juan Kent.

Dissatisfied with that outcome, the State petitioned this Court for a writ of certiorari which we granted.

The origin of the criminal law doctrine of "transferred intent" was summarized by Professor Prosser as follows:

> The doctrine of "transferred intent" appeared first in criminal cases at a time when tort and crime were still merged in the trespass action. The earliest case to invoke the doctrine appears to have been one in 1553 [*Regina v. Salisbury,* 1 Plowd. 100, 75 Eng.Rep. 158

(1553)] in which defendants set out to murder a Doctor Ellis but were indicted for murdering his servant, who apparently had attempted to defend his master. A clearer case was *The Queen v. Saunders & Archer*, [2 Plowd. 473, 75 Eng.Rep. 706 (1576)]. Defendant Saunders gave a poisoned apple to his wife. She gave a part of it to her daughter, who ate it and died. Defendant was adjudged guilty of murder of his daughter. These cases were followed in other English cases involving poisoning, shooting, and striking that went astray and accidentally injured the wrong person.

The doctrine was carried over to the United States, and "transferred intent" is of course familiar enough in a long array of criminal cases in which poisoning, shooting, striking, or throwing a missile resulted in injury to the wrong man. Not only is intent transferred, but also the degree of the crime and any defenses that would be valid if the intended victim had been hit. [Footnotes omitted].

W. Prosser, *Transferred Intent*, 45 Tex.L.Rev. 650, 652–653 (1967). There is, however, a lack of unanimity concerning the continued validity of the doctrine of transferred intent. For example, Perkins & Boyce, in their treatise on criminal law, advocate "complete rejection of the false notion of 'transferred intent' as a criminal law concept." R. Perkins & R. Boyce, *Criminal Law*, ch. 7, § 8, at 925 (1982).

Maryland's position on the continued validity of this common-law concept was made abundantly clear in *Gladden v. State*, 273 Md. 383, 330 A.2d 176 (1974). In that case we held that:

the doctrine of "transferred intent" is the law of Maryland and that the *mens rea* of a defendant as to his intended victim will carry over and affix his culpability when such criminal conduct causes the death of an unintended victim.

*Id.* at 405, 330 A.2d at 189.

In describing the doctrine of transferred intent which we adopted, we did not limit the doctrine's applicability to only cases of completed homicide. Rather, we said:

... the theory of the doctrine cogently stated is that "the state of mind which one has when about to commit a crime upon one person is considered by law to exist and to be equally applicable although the intended act affects another person." ...

Put another way, "if one intends injury to the person of another under circumstances in which such a mental element constitutes *mens rea*, and in the effort to accomplish this end he inflicts harm upon a person other than the one intended, he is guilty of the same kind of crime as if his aim had been more accurate."

*Id.* at 404, 330 A.2d at 188.

Consequently, the doctrine's applicability, as recognized by this Court in *Gladden*, extends to all situations where a defendant's intended act (which in all other respects constitutes a crime) "affects" or "inflicts harm upon" an unintended victim. Moreover, contrary to the view of the intermediate appellate court, the doctrine's applicability is not limited to only general intent crimes. In fact, the very crime to which the doctrine was applied in *Gladden* was first degree premeditated murder, unquestionably a specific intent crime.

In *Gladden*, we rejected the notion that a homicide committed with malice aforethought, in order to be considered murder, must be committed with malice aforethought *against the deceased*—an element never required under the common law. 273 Md. at 403, 330 A.2d at 187. *Accord* R. Perkins & R. Boyce, *Criminal Law*, ch. 7, § 8, at 924 (1982). We concluded that it was sufficient, in order to convict for first degree murder, that the defendant committed the homicide of the unintended victim with the specific intent to kill another. Similarly, we find it unnecessary, in order to prove an attempted murder charge, to show that the defendant's malice was directed against the injured party. Instead, we agree with the Supreme Court of Iowa when it stated "[a]n attempt to commit murder should not require proof of an intention not necessary to sustain a

charge of murder." *State v. Alford,* 260 Iowa 939, 151 N.W.2d 573, 574 (1967). We explain.

In Maryland, criminal attempt requires a specific intent [2] to commit the crime attempted. The Court of Special Appeals interpreted this requirement to mean that the crime of attempted murder requires a specific intent to kill the victim named in the indictment. We disagree. To be sure, attempted murder is a specific intent crime. However, the intent required is merely the intent to kill *someone.* In *Young v. State,* 303 Md. 298, 493 A.2d 352 (1985), we noted:

> The crime of attempt does not exist in the abstract, but rather exists only in relation to other offenses; a defendant must be charged with an attempt to commit a specifically designated crime, *and it is to that crime one must look in identifying the kind of intent required.* (Emphasis added).

*Id.* at 306 n. 5, 493 A.2d at 356 n. 5.

Moreover, in *Hardy v. State,* 301 Md. 124, 139–140, 482 A.2d 474, 482 (1984) we noted that what constitutes a criminal attempt "by definition expands and contracts and is redefined commensurate with the substantive offense," and, further, that "[i]f ... the conduct of the defendant falls within the proscribed conduct in the statute labeled as first degree murder that did *not* result in death of the victim, then the crime of attempted murder in the first degree has been established." (Emphasis added).

From the foregoing it is clear that the only difference between the crime of attempted murder and completed first

---

2. In *Shell v. State,* 307 Md. 46, 62–63, 512 A.2d 358 (1986), we quoted language in *Smith v. State,* 41 Md.App. 277, 305, 398 A.2d 426, *cert. denied,* 284 Md. 748 (1979), explaining the distinction between "specific intent" crimes and "general intent" crimes: "[A general intent crime requires] simply the general intent to do the immediate [criminal] act with no particular, clear or undifferentiated end in mind.... [On the other hand, a] specific intent is not simply the intent to do the immediate act but embraces the requirement that the mind be conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act."

degree (specific intent to kill) murder is that in the former the victim survived whereas in the latter the victim died. Moreover, the criminal conduct required to constitute an attempt to commit murder must be defined in terms of the conduct required to constitute the completed crime. In other words, a defendant such as Wilson, in order to be guilty of an attempted first degree (premeditated) murder, must harbor the same *mens rea* as that required for a completed murder.

Murder is homicide committed with malice aforethought. *Gladden, supra,* 273 Md. at 403, 330 A.2d at 187. In Wilson's case, the State proved the malice element by establishing Wilson's specific intent to kill Marvin Brown. Therefore, since under our decision in *Gladden* Wilson would have been guilty of premeditated murder had the unintended victim Juan Kent died, the elements of attempted murder were satisfied when Kent survived.

To dissuade us from this conclusion Wilson cites the decisions of several courts which have refused to apply transferred intent to specific intent crimes, *see, e.g., State v. Martin,* 342 Mo. 1089, 119 S.W.2d 298 (1938) (The specific intent required for assault with intent to maim will not be transferred from an intended victim to a person who is mistakenly hit). Most of these decisions, however, are based upon construction of statutory provisions which require that the defendant's criminal intent be directed towards the person actually injured.[3] Whereas no such statu-

---

**3.** *See Warren On Homicide* § 132 at 581, which provides as follows: An assault with intent to murder may be committed, though the person actually assaulted is not the intended victim. Thus, where one intending to kill one person assaults another he is guilty of an assault with intent to murder or to kill, if all the other essential ingredients of the offense are present. But while this is the prevailing rule, and is undoubtedly sound from the standpoint of justice as well as legal principle, a contrary doctrine is adhered to in some jurisdictions. Most of the latter decisions, however, are based on a construction of statutory provisions. [Footnotes omitted].

For an example of such a decision, *see Commonwealth v. Morgan,* 74 Ky. 601 (1876). In that case, the relevant statute provided that "if

tory limitation confronts us,[4] we find those decisions unpersuasive.

Instead, we align ourselves with the numerous jurisdictions which have applied the transferred intent doctrine to specific intent crimes including attempted murder. For example, in *People v. Neal*, 97 Cal.App.2d 668, 218 P.2d 556 (1950), the defendant, in an attempt to kill Theodore Raymond, threw a flammable liquid in Raymond's bedroom window and ignited the liquid. Raymond's wife was injured as a result of the attack and the defendant was convicted of the attempted murder of both Mr. and Mrs. Raymond. On appeal, the defendant asserted his lack of specific intent to murder Mrs. Raymond.

The *Neal* court upheld the convictions holding that:

The fact that the intent to murder may have been directed toward Mr. Raymond did not the less make the crime complete as regards the charge of attempt to murder Mrs. Raymond. "[W]here one intends to assault or kill a certain person, and by mistake or inadvertance assaults or kills another in his stead, it is nevertheless a crime, and the intent is transferred from the party who was intended to the other." *People v. Wells*, 145 Cal. 138, 140, 78 P. 470, 471 [1904]; *People v. Rothrock*, 21

---

any person shall wilfully and maliciously shoot at and wound another with an intention *to kill him*," he should be guilty of felony. 74 Ky. at 602 (emphasis added). Faced with those restricting terms, the Kentucky Court held: "if he wilfully and maliciously shoots at one with an intention to kill him and wounds another, he does not violate the statute." *Hall v. Commonwealth*, 17 Ky.L.Rep. 1365, 1366, 34 S.W. 894 (1896).

**4.** We note that Maryland's statute setting forth the penalty for the crime of assault with intent to murder, Md. Code Art. 27, § 12 (1957, 1987 Repl. Vol.), while requiring a specific intent to kill, includes no language requiring an intent to kill a specific victim. Consequently, although the crime of assault with intent to murder is not at issue in this case, we believe that the doctrine of transferred intent should be equally applicable to that crime when the defendant possesses the requisite express malice at the time he commits the aggravated assault.

Cal.App.2d 116, 119, 68 P.2d 364 [1937]; *People v. Walker*, 76 Cal.App.2d 10, 15, 172 P.2d 380 [1946].
218 P.2d at 559.

Similarly, the court in *People v. Humes*, 78 Ill.App.3d 255, 33 Ill.Dec. 797, 397 N.E.2d 130 (1979), upheld under the doctrine of transferred intent the defendant's conviction for two counts of attempted murder. In *Hume*, the defendant fired shots at his intended victim with intent to kill him and one of the shots richocheted and struck the unintended victim.

In *Norris v. State*, 275 Ind. 608, 419 N.E.2d 129 (1981), the Supreme Court of Indiana, after noting that the offense of attempted murder is a specific intent crime, held that "[u]nder the doctrine of transferred intent, the essential element is present if the accused intended to kill *someone*." 419 N.E.2d at 133 (emphasis added).

In *State v. Thomas*, 127 La. 576, 53 So. 868 (1910), the Supreme Court of Louisiana considered a case where a defendant shot at his intended victim and wounded both the intended victim and an unintended third party (Meyers) who was standing nearby. The indictment charged the defendant with shooting Meyers "with intent to commit murder." The court rejected the defendant's argument that because the shooting of Meyers was "accidental" he lacked the requisite intent to be convicted. The *Thomas* court held that:

The allegations of the indictment [are] fully proved, if there is the shooting of any person,—no matter of what person,—and the shooting is done with a dangerous weapon and with intent to commit murder; ... there is nothing in the terms of the statute requiring that the person who was shot [must] have been the person intended in fact to be murdered, or who was shot at. 53 So.2d at 869.

In *State v. Gillette*, 102 N.M. 695, 699 P.2d 626 (1985), the New Mexico Court of Appeals applied the transferred intent doctrine to uphold the defendant's convictions on three counts of attempted murder by poisoning. The court deter-

mined that because the defendant left a poisoned drink for his victim intending to kill her, his intent was transferred to each person who drank from the container. The court concluded that the defendant's intent followed the container of poison and, therefore, he was guilty of attempted murder of each individual who ingested the poison. 699 P.2d at 639; *see also*, Note, Criminal Law—*The Use of Transferred Intent in Attempted Murder, a Specific Intent Crime: State v. Gillette*, 17 N.M.L. Rev. 189 (1987).

In light of the foregoing, we hold that the doctrine of transferred intent applies to the crime of attempted murder and that the *mens rea* or specific intent of a defendant as to his intended victim will carry over and determine his culpability when such criminal conduct causes injury to an unintended victim.

After applying the doctrine of transferred intent to the facts of the case at bar, it becomes clear that Wilson's conviction for the attempted murder of Juan Kent, the unintended victim, must be affirmed. Wilson shot at Brown with intent to kill him, and one of those shots struck Kent causing him severe injury. Wilson's intent to kill followed his bullet and affixed his culpability for the attempted murder of Juan Kent.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. APPELLANT TO PAY THE COSTS.