Steven Lee **BROOKS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 93–CF–478.

District of Columbia Court of Appeals.

Argued Dec. 14, 1994.
Decided March 9, 1995.

---

M. Elizabeth Kent, appointed by the court, Washington, DC, for appellant.

Leslie A. Blackmon, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Eric M. Acker, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN and FARRELL, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

A jury found appellant guilty of, among other things, three counts of assault with intent to murder (AWIM) while armed, D.C.Code §§ 22–503, –2403, –3202(a)(1) (1989).[1] His principal argument on appeal is that, as to two of these convictions, the trial judge committed plain error by instructing the jury on the theory of transferred intent. We affirm.

## I.

The evidence, viewed in the light most favorable to the government, revealed that appellant fired five or six shots from a handgun at Jermaine Acklin from ten to twenty feet away. The shots struck both Acklin and Leslie German in the legs. A third person, April Strauss, standing with Acklin, was also put in fear by the shots.[2] The indictment charged appellant with assaulting Acklin with intent to murder him. It further charged him with assaulting German and Strauss, individually, with intent to murder Acklin. With respect to the second and third assaults, the trial judge at the request of the prosecutor instructed the jury on "the principle of transferred intent, [namely that] one who intends to assault one person and assaults a bystander or a third person, is deemed to have committed whatever form of assault he would have committed had he assaulted the intended victim."

## II.

We first consider appellant's claim that the evidence was insufficient, as a mat-

1. D.C.Code § 22–503 provides:

   Whoever assaults another with intent to commit any other offense which may be punished by imprisonment in the penitentiary shall be imprisoned not more than 5 years.
   D.C.Code § 22–2403 defines murder in the second degree. D.C.Code § 22–3202(a)(1) permits enhanced punishment of up to life imprisonment for commission of a "crime of violence" while armed with a firearm or other dangerous or deadly weapon.

2. Strauss was therefore assaulted under either form of criminal assault as defined in *Robinson v. United States*, 506 A.2d 572, 574 (D.C.1986). German and Strauss were law students who, in Acklin's company, were investigating an unrelated drug case on behalf of a university juvenile justice clinic.

ter of law, to establish that he intended to murder Acklin.[3] He contends that at most the evidence showed that he had the general intent to assault Acklin (and the others) with a dangerous weapon. We disagree. As in *Gray v. United States,* 585 A.2d 164 (D.C. 1991), a rational jury could reasonably find that appellant intended to kill Acklin. In *Gray* the defendant, who had no apparent motive to kill, fired multiple shots in the direction of three children at close range, striking one. We sustained the convictions for assault with intent to kill while armed because "[t]o fire a weapon at such range was bound to place in peril the lives of [the] young potential victims," and because the defendant's lethal intent could be inferred from these circumstances. *Id.* at 165. In the present case, unlike *Gray,* there was at least marginal evidence of a motive on appellant's part to kill Acklin,[4] and, as in *Gray,* appellant fired a succession of shots at Acklin[5] from a short distance away. This evidence was sufficient to prove his intent to murder Acklin.

3. While an AWIM conviction requires proof of "a malicious intent to kill," *Hunter v. United States,* 590 A.2d 1048, 1051 (D.C.1991); *Logan v. United States,* 483 A.2d 664, 676 (D.C.1984), appellant concedes, on the facts of this case, that if the proof was sufficed to show his specific intent to kill as to each count, it also sufficient to show "malicious" intent to kill.

Appellant does protest broadly that he was "'overcharged' [by the government] due to his juvenile status." As a person seventeen years old at the time of the shootings, appellant was charged with AWIM rather than assault with intent to kill because of this court's decision in *Logan, supra,* holding that "the plain language of [D.C.Code] § 16–2301(3)(A) [defining 'child' for purposes of Family Division jurisdiction] authorize[s] adult prosecution only for assault with intent to commit *murder,* a crime distinct from assault with intent to *kill." United States v. Hobbs,* 594 A.2d 66, 66 (D.C.1991) (emphasis in *Hobbs*). In *Hobbs* we sustained, in light of *Logan,* a decision by the government to charge the juvenile defendant as an adult with assault with intent to murder. *Id.* at 68–70. Because appellant was properly charged as an adult under § 16–2301(3)(A), and has no cognizable due process challenge to the charging decision, *Marrow v. United States,* 592 A.2d 1042, 1045–47 (D.C. 1991), we reject his argument of abuse of prosecutorial discretion.

4. This was in the form of unobjected-to hearsay testimony that appellant shot Acklin because he

## III.

Appellant concedes that he committed three separate assaults by firing multiple shots at the victims, wounding two. *See, e.g., Ruffin v. United States,* 642 A.2d 1288, 1297–98 (D.C.1994). He argues, however, that the trial judge erred in permitting the jury to "transfer" his specific intent to murder Acklin to the act of assaulting the two unintended victims, German and Strauss. Appellant asks us to limit application of the common law doctrine of transferred intent by holding that "when a specific intent assault injures the intended victim, the doctrine of transferred intent does not apply." In support of this argument, he cites the decision of the Court of Appeals of Maryland in *Ford v. State,* 330 Md. 682, 625 A.2d 984 (1993), urging that we follow *Ford* "as most persuasive authority in interpreting the common law doctrine of transferred intent in this jurisdiction."[6] In *Ford* the Maryland court disavowed its earlier decision in *State v. Wilson,* 313 Md. 600, 546 A.2d 1041 (1988), and

had heard Acklin was going to rob him—a sort of preemptive strike.

5. Before firing the shots, appellant addressed words to Acklin ("Are you looking for me?"), and Acklin testified that appellant pointed the gun at him and began firing.

6. D.C.Code § 49–301 (1990) "provides that all consistent common law in force in Maryland at the time of the cession of the District of Columbia [1801] remains in force as part of the law of the District unless repealed or modified by statute." *O'Connor v. United States,* 399 A.2d 21, 25 (D.C.1979). "[T]his court has, customarily, looked to [post–1801] decisions of the Court of Appeals of Maryland for assistance ... in interpreting the law which was inherited from that State...." *Watkins v. Rives,* 75 U.S.App.D.C. 109, 111, 125 F.2d 33, 35 (1941). In *O'Connor,* relying on *Gladden v. State,* 273 Md. 383, 330 A.2d 176 (1974), we concluded that "the doctrine of transferred intent was contained at the critical time of Maryland's cession of the District within the body of criminal law for the District of Columbia...." *O'Connor,* 399 A.2d at 25.

The argument appellant makes was previously presented to this court in *Ruffin v. United States, supra.* There we found it unnecessary to decide "whether or not the Maryland court's recent pronouncement in *Ford* is authoritative with regard to this court's interpretation of the common law theory of transferred intent...." 642 A.2d at 1294 n. 9.

concluded (if it did not hold)[7] that whenever a defendant has "'committed a completed crime against his intended victim which is as serious as the greatest level of culpability which could be achieved by transferring that intent to his unintended victim,'" the transferred intent doctrine should not be applied. *Ford*, 625 A.2d at 1000 (quoting *People v. Calderon*, 232 Cal.App.3d 930, 283 Cal.Rptr. 833, 836 (1991)).[8] Under *Ford*, therefore, appellant's intent to murder Acklin could be "transferred" only if he had killed German or Strauss.

■ The government argues at the threshold that appellant's claim of instruction error must be reviewed under plain error standards, Super.Ct.Crim.R. 52(b) (1994). We agree, and find this point dispositive. Appellant did not object to the transferred intent instruction, twice stating that he was satisfied with the instructions as given. He accordingly must demonstrate both that the alleged instructional error was "'obvious or readily apparent,'" and that it was "'so clearly prejudicial to [his] substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Harris v. United States*, 602 A.2d 154, 159 & n. 6 (D.C.1992) (en banc) (citations omitted); *see also Foreman v. United States*, 633 A.2d 792, 795 (D.C.1993) ("Both prongs of the [plain error] standard must be satisfied"). It is enough in this case to hold that appellant fails the first prong of the test.

First, even assuming that *Ford*—as a Maryland decision interpreting the common law—would be persuasive authority on the limits of the transferred intent doctrine, *Ford* could not have commended itself to the trial judge in this case because it was decided after appellant's November 1992 trial. Indeed, the *Ford* court recognized that its understanding of transferred intent was contrary to the prevailing rule in Maryland of *Wilson, supra*, that transferred intent could properly support a conviction for attempted murder (or, presumably, assault with intent to murder) even if that crime had also been completed against the intended victim.[9] *See also State v. Earp*, 319 Md. 156, 571 A.2d 1227, 1231 (1990) (specific intent required for attempted murder "may be a 'transferred' intent, that is, the *mens rea* of a defendant as to his intended victim will be transferred to an unintended victim who suffers injury as a result of the defendant's attempt"). Looking solely to Maryland law, therefore, it scarcely could have been obvious to the trial judge— quite to the contrary—that appellant's intent to murder Acklin could not be "transferred" so as to complete the crimes of specific intent assault on German and Strauss.

Of greater importance, however, is the fact that case law in this jurisdiction would have left the trial judge with at least a serious question whether *Ford*'s limitation on transferred intent can be reconciled with this court's interpretation of D.C.Code § 22–503, under which appellant was charged. The government states that, before "the Maryland Court of Appeals' decision in *Ford*, this Court ... had not considered the argument advanced by appellant in this appeal—namely, whether transferred intent may properly be used to support a conviction for assault with intent to murder an unintended victim when an assault with intent to murder has also been completed against the intended victim."[10] That may be true, but two prior decisions of this court nonetheless have construed the *mens rea* element of § 22–503, as

---

7. *See Ford*, 625 A.2d at 1004 (court's discussion of transferred intent "dictum") (McAuliffe, J., concurring).

8. The *Ford* court reasoned partly as follows:
   [T]ransferred intent makes a whole crime out of two halves by joining the intent as to one victim with the harm caused to another victim. Transferred intent does *not* make two crimes out of one. Where the crime intended has actually been committed against the intended victim, transferred intent is unnecessary and should not be applied to acts against unintended victims.

625 A.2d at 998.

9. Interestingly, the *Wilson* court had relied heavily on *Gladden, supra* note 6, the same decision this court looked to in concluding that transferred intent is part of the criminal law of this jurisdiction. See *supra* note 6.

10. Apparently, in neither *O'Connor, supra* note 6, nor *In re E.D.P.*, 573 A.2d 1307, 1308 (D.C.1990), each of which expressly applied the doctrine of transferred intent, was the defendant charged with assaulting his intended victim.

well as of its companion statute § 22–501 (assault with intent to kill, rob, or commit related offenses), in a manner consistent with the doctrine of transferred intent.

In *Moore v. United States,* 508 A.2d 924 (D.C.1986) (per curiam), the defendant was convicted of armed robbery of one victim, Cotten, and of assault of another, Rowe, with the intent to rob Cotten (§ 22–501).[11] On appeal he challenged the second conviction on the ground that § 22–501 requires that the person assaulted be the person the defendant intended to rob. We rejected that argument, holding that although "[n]either the language of the statute nor its legislative history is dispositive" of the issue, *id.* at 925, it would "ignore common sense and [the] evident statutory purpose" to require identity between the intended victim of the assault and the person actually assaulted. *Id.* at 926.

> The increased penalty attendant to an assault with intent to rob, as opposed to a simple assault, is reflective of a major statutory purpose, to punish an assailant whose criminal conduct potentially exposes the assault victim to a greater risk of harm because the assault is accompanied by an intent to commit another offense....
>
> \*  \*  \*  \*  \*  \*
>
> Giving the language of our statute its full meaning, it would be nonsensical to limit its scope to situations involving a single victim; particularly, where the assault on one victim is used to effectuate the robbery of another at the scene.

*Id.*

In *Battle v. United States,* 515 A.2d 1120 (D.C.1986), we applied the holding of *Moore* to § 22–503—specifically, to multiple assaults with the intent to kidnap. Rejecting the

same argument made in *Moore,* we agreed with the government "that neither the language of § 22–503 nor any legislative purpose underlying its creation compel an interpretation requiring that the other offense intended must be directed against the same person as the assault." *Id.* at 1124. A contrary reading, we concluded,

> would frustrate the purpose of § 22–503 in instances where, as here, a defendant assaults one victim with the intent to effectuate the commission of another crime against a second victim. There is clearly a most compelling societal interest in curbing such conduct, and § 22–503 provides the means to do so.

*Id.* at 1125.

Neither *Moore* nor *Battle* mentioned the doctrine of transferred intent. Yet, at least for purposes of plain error analysis, each can be viewed as holding that its statute in question "transfers" intent in the sense that a specific intent to assault (*i.e.,* rob, kidnap, etc.) a person A substitutes for a specific intent to assault the victim B. Each statute does so, *Moore* reasoned, because of the heightened exposure to harm of victim B from the aggravating mental element of an intent to commit another crime. Moreover, both decisions appear to envision prosecutions for assaults on both A and B (and C) since, as *Moore* stated, "it would be nonsensical to limit [§ 22–501's] scope to situations involving a single victim...."[12] 508 A.2d at 926. Accordingly, a Superior Court judge aware of *Moore* and *Battle,* asked to instruct on transferred intent as in appellant's case, would not find it easy to say how that theory differs from the very definition of § 22–503's *mens rea,* which essentially makes the identi-

---

11. D.C.Code § 22–501 provides:

    Every person convicted of any assault with intent to kill or to commit rape, or to commit robbery, or mingling poison with food, drink, or medicine with intent to kill, or wilfully poisoning any well, spring, or cistern of water, shall be sentenced to imprisonment for not less than 2 years or more than 15 years.

12. *Moore,* as pointed out, involved victims A and B, and convictions of armed robbery of A and of

assault of B with intent to rob A. Similarly, in *Battle,* the defendant Rodriguez was convicted of two counts of assault with intent to kidnap while armed. The first conviction involved assault of Lisa Vitorino with intent to kidnap Carlos Vitorino while armed. While the court did not state explicitly that the second conviction involved assault of Carlos Vitorino with intent to kidnap him, the court's recital of the facts of the case fully supports that conclusion.

ty of the person intended to be assaulted immaterial.[13]

We caution that we make these observations only to demonstrate that the asserted error in instructing on transferred intent could not have been "obvious or readily apparent" to the trial judge. In a case where the issue has been raised in the trial court, a defendant will remain free to argue for adoption of the *Ford* analysis and inapplication of the transferred intent doctrine to a situation where (as in this case) it arguably buys the prosecution multiple specific-intent assault convictions for the price of one. The court will then have to focus directly on the relationship between transferred intent and the statutes construed in *Moore* and *Battle, supra.* We decide in this case only that, not having preserved the issue for appeal, appellant has not demonstrated plain error in the giving of the transferred intent instruction.[14]

*Affirmed.*

FERREN, Associate Judge, with whom MACK, Senior Judge, joins, concurring:

I join in the opinion for the court but wish to emphasize that we find no plain error. Although Judge Farrell's analysis under D.C.Code § 22–503 (1989 Repl.) may have merit, we are not adopting that analysis today. Accordingly, we are not foreclosing an argument against transferred intent in non-fatal assault cases under the Maryland Court of Appeals' analysis in *Ford v. State,* 330 Md. 682, 625 A.2d 984 (1993). *See Howard v.* *United States,* 656 A.2d 1106, 1112 & nn. 3–5 (1995).

MACK, Senior Judge, concurring:

I join Judge Ferren's concurring opinion. I would emphasize, in addition, that I embrace the rationale of Maryland's *Ford* [1] decision (as recited in Judge Farrell's footnote 8) that "Transferred intent does *not* make two crimes out of one." As to Judge Farrell's discussion of our cases construing the *mens rea* element of D.C.Code § 22–503 (1989) [2] (decided on the basis of "common sense and evident statutory purpose"), I would also emphasize that the factual pattern in those cases reflected assaults on one victim with the intent to "effectuate" the commission of another crime against a second victim.

13. In *Moore* the government argued only that § 22–501's prohibition "includes the assault on any individual who is *on the scene* of an intended robbery when the assault is done in an effort to carry out the robbery," 508 A.2d at 925 (emphasis added), and the court's interpretation of the statute applied "particularly, where the assault on one victim is used to effectuate the robbery of another *at the scene.*" *Id.* at 926 (emphasis added). In the present case, of course, all of the victims assaulted were on the scene of the intended killing of Acklin.

14. In its brief on appeal the government also argued, in reliance on part of *Ruffin,* that appellant's convictions as to German and Strauss could be sustained on a theory of "concurrent intent." *See Ruffin,* 642 A.2d at 1298 (despite assumed instructional error on transferred intent, jury necessarily must have found specific intent anyway to kill the actual victims). At oral argument, however, the government abandoned

this point, candidly recognizing that on the facts of this case *that* theory would entail a constructive amendment of the indictment, which did not charge specific intent to murder German or Strauss.

We reject appellant's remaining argument, made for the first time on appeal, that the trial judge's supplemental instruction to the jury amounted to plain error. In response to a note from the jury, appellant, at minimum, encouraged the judge to give the supplemental instruction in question; and that instruction adequately responded to the jury's request for further guidance.

1. *Ford v. State,* 330 Md. 682, 625 A.2d 984 (1993).

2. *See Moore v. United States,* 508 A.2d 924 (D.C. 1986) (per curiam), and *Battle v. United States,* 515 A.2d 1120 (D.C.1986).