George WEST, Appellant,

v.

UNITED STATES, Appellee.

Nos. 01–CF–628, 03–CO–682.

District of Columbia Court of Appeals.

Argued March 30, 2004.
Decided Jan. 19, 2005.

David Carey Woll, Wheaton, MD, appointed by the court, with whom Michael S. Woll was on the brief, for appellant.

Mary B. McCord, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Roy W. McLeese III, and Glenn L. Kirschner, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

George West was convicted after trial by jury of first-degree murder while armed, assault with intent to kill while armed (AWIKWA), two counts of possession of a firearm during a crime of violence (PFCV), and carrying a pistol without a license (CPWL). D.C.Code §§ 22–2401, –3203, –501, –3204(b), and –3204(a) (1996). He raises numerous claims of error on appeal, including: the validity of the trial court's transferred intent instruction, sufficiency of the evidence as to the first-degree murder and the AWIKWA counts, alleged prosecutorial misconduct, denial of his motion for a mistrial, failure to suppress identification testimony, the denial of his D.C.Code § 23–110 motion, and merger of the two PFCV counts. We affirm as to all counts but remand for re-sentencing on the merged PFCV counts.

## I.

On August 6, 1998, Carolyn Wade, Albert King, and George West were at an outdoor cookout between apartment buildings in the 700 block of Brandywine Street in the Southeast quadrant of the District of Columbia. West and a man named Michael Green stood next to Wade, who had known them since they were children because they were friends of her brother. While the three stood together, King approached their location; suddenly, shots rang out from where West was standing. As Wade started to run to her apartment, she looked down and realized she had been shot in the leg. Wade was taken to D.C. General Hospital and treated for two gunshot wounds to her left leg. King was killed, an autopsy revealing he was shot four times in the chest.

In addition to Wade's trial testimony, Vinetta Logan testified that, after the first shots rang out, she saw one of the men standing next to Wade running toward her while firing back in Wade's direction. Logan saw King fall to the ground and she saw the other man who had been standing next to Wade run off in a different direction. Other evidence at trial included the testimony of Louis Saunders, who knew West from growing up in the same neighborhood and who was incarcerated with West in the same cell block while West awaited trial. Saunders testified that West told him he got into a fight with King at some point and that, when he heard King was at the cookout, West went and "did him," and that he shot a girl at the same time. The defense presented no witnesses at trial, but did enter into evidence excerpts of Wade's grand jury testimony that it argued were inconsistent with her trial testimony.

On September 14, the morning after the trial had concluded and the first full day of deliberations, the juror assigned to jury seat number 12 (juror number 493) informed the courtroom clerk that the day before she saw someone she knew in the courtroom. The trial judge directed the jury to suspend deliberations and conducted a voir dire in chambers of juror 493 with the prosecutor and counsel for West present. Juror 493 claimed that this person, Marcus Brooks, whom she knew from elementary and junior high school, saw her and then covered his mouth with his hand and appeared to speak to the person next to him about her. Juror 493 was afraid because she believed Brooks to be a friend of West, and because Brooks knew where she lived. She informed the judge that she had mentioned her concern to three other jurors on the morning of the fourteenth, and that she continued to be concerned about her ability to decide the case.

At the joint request of the parties, the court struck juror 493. West moved for a mistrial, which the trial court took under advisement pending a voir dire of the re-

maining jurors. After receiving suggestions and proposed questions for the voir dire, the court's voir dire revealed that four other jurors had noticed juror 493 was upset and spoken with her about it. Of those four, one juror knew only that juror 493 had seen someone she knew in the courtroom; the other three knew both that she had seen someone and that he appeared to have whispered something about her, and that juror 493 was upset and afraid. Of those three jurors, juror 765 stated that she speculated that Brooks might be a friend of the appellant.

In addition to instructing all of the jurors that they were not to draw any inferences from the excusal of juror 493, who the court informed had been excused for personal reasons, the trial judge cautioned each juror that he or she was to decide the case based solely on fair consideration of the evidence. Each of the four jurors who spoke with juror 493 averred he or she would follow this instruction. Following this voir dire, the trial judge concluded that none of the jurors exhibited any bias and denied West's motion for a mistrial.

After his conviction on all charges, West filed a § 23–110 motion alleging ineffective assistance of trial counsel for failing to object to admission of Saunders' testimony on the ground that it violated West's Sixth Amendment right to counsel. The trial judge denied the motion without a hearing after ruling that Saunders was not acting as a government agent and thus West's constitutional rights were not violated by the conversation. We consolidated West's appeal of the denial of his § 23–110 motion with his direct appeal.

## II. Transferred Intent Instruction

West argues, for the first time on appeal, that the doctrine of transferred intent is inapplicable to an assault with intent to kill charge when the victim was not actually killed. West contends, therefore, that the trial court erred when it gave the jury the following instruction for the AWIKWA charge:

> Specific intent to kill in this context means purposely or a conscious intention to cause death. You are further instructed on this offense that when an individual intends to kill one person, but mistakes [sic] or inadvertently injures another person who may not be the intended target, the law transfers the specific intent from the target of the assault to the actual victim.

Because West did not object to the instruction at trial, this court reviews for plain error. *Brooks v. United States*, 655 A.2d 844, 847 (D.C.1995); Super. Ct.Crim. R. 30. In order to establish plain error, West must show that any error in giving the transferred intent instruction was "obvious or readily apparent, and that it was so clearly prejudicial to [his] substantial rights as to jeopardize the very fairness and integrity of the trial." *Id.* (quoting *Harris v. United States*, 602 A.2d 154, 159 & n. 6 (D.C.1992) (en banc) (citations omitted)). West urges us to adopt the reasoning of *Harvey v. State*, 111 Md.App. 401, 681 A.2d 628 (1996), in which a Maryland court held that transferred intent does not apply when the unintended victim is not killed. Maryland law is not binding precedent on this court. *Ruffin v. United States*, 642 A.2d 1288, 1294 n. 9 (D.C. 1994).[1]

We have applied transferred intent to, *inter alia*, assault with intent to rob, *Moore v. United States*, 508 A.2d 924 (D.C. 1986); assault with intent to kidnap, *Battle v. United States*, 515 A.2d 1120 (D.C.1986);

---

1. We may, of course, look to Maryland law because the District of Columbia derives its common law from Maryland as of 1801. *Ruffin, supra.*

assault with intent to commit murder where both the intended and unintended victims were wounded but not killed, *Brooks, supra;* and assault with intent to kill when both the intended and unintended victims were killed, *Lloyd v. United States,* 806 A.2d 1243 (D.C.2002). Although the argument raised by appellant has not been precisely addressed in our cases, we think that it should not have been plain or obvious to the trial court that transferred intent did not apply to the facts of this case, where the unintended victim's proximity, known to appellant, exposed her to harm when he began to fire at the intended victim. *See id.* at 1249. Because that same fact would have supported an instruction and finding of concurrent intent, *see Ruffin,* 642 A.2d at 1298, there was no jeopardy to the fairness or integrity of the trial. The trial court, therefore, did not plainly err in giving the transferred intent instruction.

### III. Sufficiency of the Evidence

West first claims that, because transferred intent should not apply to an AW-IKWA charge, the evidence was insufficient to sustain his conviction of that charge. Because we hold that it was not plain error to give the transferred intent instruction in this case, and because West does not otherwise contend that the evidence was insufficient to convict him of that charge, we reject this claim.

 West also argues that the evidence was insufficient to convict him of the first degree murder of Albert King. When reviewing the sufficiency of the evidence, we look at the evidence "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Busey v. United*

*States,* 747 A.2d 1153, 1160 (D.C.2000) (citation omitted).

 The government sought to prove that King's murder was premeditated based on West's confession to Saunders while the two were in jail. West argues that Saunders' testimony, including that West and King had been in a fight and that West wanted to see King again, was crucial to establishing his guilt but was uncorroborated by independent evidence. When an admission is used to prove a crime, the admission must be corroborated by independent evidence. *Adams v. United States,* 502 A.2d 1011, 1022 (D.C.1986). " '[T]he adequacy of corroborating proof is measured . . . by the extent to which it supports the trustworthiness of the admissions.' " *Id.* at 1023 (quoting *United States v. Johnson,* 191 U.S.App. D.C. 193, 195–96, 589 F.2d 716, 718–19 (1978)).

 Corroborating proof of West's admissions to Saunders is found in the testimony of Wade and Logan; their testimony, viewed in the light most favorable to the government, shows that West arrived at the scene of the crime already armed, that he waited for King to approach, and that when King was close, he drew the gun and fired repeatedly before fleeing. "Carrying a gun to the scene of the murder is 'highly probative of premeditation and deliberation' because it suggests that the defendant arrived on the scene with a preconceived plan to kill." *Busey, supra,* 747 A.2d at 1161 (citations omitted). We are satisfied, therefore, that West's admissions combined with the corroborating evidence is sufficient to allow a reasonable jury to find West guilty of first-degree murder.

### IV. The Prosecutor's Closing Argument

 During closing arguments, counsel for West asked the jury to consider Wade's prior conviction for distribution of

cocaine when they evaluated her credibility. In rebuttal, the prosecutor responded by saying it was "ludicrous" to question her credibility on that basis. Defense counsel sought a bench conference to "protest" the comment but did not seek a mistrial. At the bench conference, the trial judge cautioned the prosecutor to "clean up the semantics because it's just a matter of semantics in my mind. You have to argue it as a matter of evidence and weight for that in this case." The prosecutor then returned to the jury and said:

> Look at the evidence in this case. Does the fact that Ms. Wade, hard-working woman, have [sic] a problem and got herself a drug conviction seven or eight years ago give you reasonable doubt as to her testimony that George shot her? Absolutely not. And it's a troubling suggestion to the contrary.

West now asks us to find reversible error, and plain error at that, since the trial court did not further intervene, *sua sponte*, despite counsel's mere "protest" and silence as to the last comment on Ms. Wade's credibility.

▬▬▬ When this court analyzes "claims of alleged prosecutorial [error], we must first determine whether the prosecutor's actions were improper." *Coreas v. United States*, 565 A.2d 594, 600 (D.C. 1989). An attorney is allowed to comment on the evidence, but if he states "an outright expression of opinion," then the comment is improper. *Irick v. United States*, 565 A.2d 26, 32 (D.C.1989) (citation omitted). If the comment is impermissible, we will nonetheless affirm a conviction unless the accused "suffered substantial prejudice as a result of the comment." *Allen v. United States*, 649 A.2d 548, 555 (D.C. 1994). Although West objected to the

prosecutor's "ludicrous" remark, his objection was based on its being "an incorrect statement of the law" rather than being a personal opinion or an expression of personal outrage.[2] West did not ask for a curative instruction, nor did he object to the prosecutor's second remark, quoted above. Therefore, we consider whether the asserted misstep required court intervention, *sua sponte*, on the basis that the challenged argument was "so clearly prejudiced [West's] substantial rights as to jeopardize the fairness and integrity of his trial." *Irick, supra*, 565 A.2d at 32 (citations omitted). We hold that that level of prejudice was not reached. The force of the prosecutor's comments was aimed at rebutting West's challenge to Wade's credibility as one of the key witnesses against him. Moreover, the court instructed the jury that the closing arguments were not evidence and that the jury was the sole arbiter of witness credibility. Wade was not the only witness establishing West's guilt. Finally, the remarks were not analogous to those in other cases reversed on these grounds. *Cf. Dyson v. United States*, 418 A.2d 127, 130–31 (D.C.1980) (conviction reversed after repeated statements that defense witnesses lied, that defendant fabricated testimony); *Villacres v. United States*, 357 A.2d 423, 428 (D.C. 1976) (conviction reversed after repeated misstatements of evidence, including remarks on inadmissible confession, argument that crime was comparable to the crucifixion of Christ). We hold that the now-targeted closing argument did not infect the judgment of conviction with reversible error.

### V. Motion for Mistrial

▬▬▬ West argues on appeal that juror 765 was prejudiced and that the man-

---

**2.** "A litigant may not assert one theory at trial and another theory to the appellate court." *Baxter v. United States*, 640 A.2d 714, 717 (D.C.1994) (citations omitted).

ner in which the trial court conducted the voir dire was deficient. The right to trial by impartial jury is "fundamental and deeply embedded in American jurisprudence." *Hughes v. United States*, 689 A.2d 1206, 1207 (D.C.1997). When the impartiality of a juror is in doubt, "it is the responsibility of the trial judge to hold a hearing to determine whether the allegation of bias has merit." *Medrano–Quiroz v. United States*, 705 A.2d 642, 649 (D.C. 1997). Following a hearing such as the one held by the trial court, "the determination of juror bias or prejudice lies particularly within the discretion of the trial court, reversible only for a clear abuse of discretion . . . ." *Id.* (quotation marks and citation omitted). In order to prove bias, West must establish by a preponderance of the evidence a substantial likelihood of actual prejudice. *Id.* at 650 (citations omitted).

■ West contends that the trial judge's failure to individually question each juror as to bias rendered the hearing "meaningless, deficient and improper" because it did not ascertain whether each juror had formed an opinion about West in light of juror 493's behavior and excusal. The record shows, however, that the trial judge invited suggestions on how to proceed and sought proposed questions from both parties before determining how to conduct the voir dire. During the voir dire, the trial judge individually questioned each of the four jurors who had contact with juror 493, and each juror assured that he or she would determine the case based solely on fair consideration of the evidence. The judge stated that he "tried to question these jurors fairly and look at their reactions and frankly each of them passed what I believe to be the test to be fair and impartial based on the demeanor they were giving and the answers and the answers themselves." Because the hearing

procedure was adequate, and because we will not lightly upset the trial judge's conclusion that the defendant was not prejudiced, *Medrano–Quiroz, supra*, the trial court did not abuse its discretion.

West further contends that the trial court's voir dire "revealed that there was substantial evidence" that juror 765 was tainted by her interaction with juror 463. On the contrary, when individually questioned by the trial judge, juror 765 assured the court that she was capable of deciding the case fairly. Moreover, in deciding that juror 765 was not tainted, the trial judge pointed out:

> I looked at that juror, I think I questioned her fairly and I allowed both counsel to question her fairly. She struck me as a juror who would just decide this case based on the evidence and would not make any inference whatsoever. And frankly, had I any doubt about her reaction or truthfulness to the questions I don't think I would think twice about declaring a mistrial.

West's speculation about "the natural inferences that Juror 765 would draw" is unsupported by the record. Thus, West fails to establish by a preponderance of the evidence a substantial likelihood of actual prejudice, the trial judge did not abuse his discretion.

### VI. Motion to Suppress Identification

■ West argues that the trial court erred when it denied his motion to suppress his identification by Ms. Wade because she was only shown two photos by the police and was told who the photos were of. West also argues Wade's identification was unreliable because, when first shown the photos, she confused him with his companion who also stood next to Wade that evening. Although the use of a single photo for identification is highly suggestive, we will uphold the conviction if

the identification was nonetheless reliable under all of the circumstances. *Green v. United States,* 580 A.2d 1325 (D.C.1990). In *Green,* we upheld an identification based on the use of a single photo when the witness also knew the defendant and had named him. *Id.* at 1327.

In this case, Wade identified West to the police by his first name, stating that her brother and West were friends, that she had known West since they were twelve or thirteen years old and had grown up in the same apartment complex. Wade testified that on the night of the shooting, West had acknowledged her and mentioned to his companion that she was the sister of a friend of his. Finally, Wade identified West in court without hesitation or doubt. On this record, therefore, the trial court did not err when it denied the motion to suppress as there was no probability of irreparable misidentification. *Id.* at 1326.

## VII. D.C.Code § 23–110 Motion

 West argues that Saunders, who testified about West's jailhouse confession, was acting as a government agent at the time the two discussed West's case, thereby violating West's Sixth Amendment right to counsel. Saunders had pleaded guilty to drug charges in 1997 and entered into a plea agreement to do undercover work with the Federal Bureau of Investigation and provide information about other criminal cases. Paragraph 4(a) of the agreement provided that Saunders "shall cooperate truthfully, completely and forthrightly with the Office and other Federal, state and local law enforcement authorities identified by this Office in any matter as to

which the Government deems the cooperation relevant."

While released in the drug case, however, Saunders committed an aggravated assault and was again placed in jail. Saunders had not been sentenced in the drug case at the time he testified against West. In his § 23–110 motion, West argued that his trial counsel's failure to object to Saunders' testimony, therefore, constituted ineffective assistance of counsel. The trial court denied West's § 23–110 motion without a hearing after concluding that, because Saunders was not in fact acting as a government agent, West could not show he was prejudiced by his trial counsel's failure to object to the testimony.

 If West's assertions are vague or conclusory, or if the records of the case "conclusively show that the prisoner is entitled to no relief," the trial court need not conduct a hearing on the motion. D.C.Code § 23–110(c) (2001).[3] In order to prevail on a claim of ineffective assistance of counsel, West must show that (1) his attorney was deficient because his errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) that counsel's deficient performance so prejudiced the defense "as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that if counsel had not erred, there is a reasonable probability that the result would have been different. *Id.* at 694, 104 S.Ct. 2052. On appeal, this court reviews the trial court's legal conclu-

---

3. We are quite satisfied that the record of the trial provided the trial court with adequate evidence respecting its conclusion that Saunders was not acting as a government agent when he talked to West. *Ready v. United States,* 620 A.2d 233, 234 (D.C.1993). The order denying the motion is meticulous and thorough in its factual and legal analyses, with painstaking reference to the terms of the agreement between Saunders and the government.

sions *de novo*. *Byrd v. United States*, 614 A.2d 25, 30 (D.C.1992).

■■■■■ The Sixth Amendment right to counsel is violated when a government agent deliberately elicits incriminating statements from a defendant who has been indicted and the defendant's lawyer is not present. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Federal courts have refused to extend this constitutional protection " 'to situations where an individual, acting on his own initiative, deliberately elicits incriminating information.' " *United States v. Watson*, 282 U.S.App. D.C. 305, 307, 894 F.2d 1345, 1347 (1990) (quoting *United States v. Malik*, 680 F.2d 1162, 1165 (7th Cir.1982)); *see also Moore v. United States*, 178 F.3d 994, 999 (8th Cir.1999); *United States v. Birbal*, 113 F.3d 342 (2d Cir.1997); *Robinson v. Clarke*, 939 F.2d 573, 576–77 (8th Cir.1991); *Brooks v. Kincheloe*, 848 F.2d 940, 944–45 (9th Cir.1988); *United States v. Taylor*, 800 F.2d 1012, 1016 (10th Cir.1986); *United States v. Van Scoy*, 654 F.2d 257, 260 (3d Cir.1981). Thus, when the government did not expressly or implicitly place the informant in jail for the purpose of eliciting incriminating information, the informant is not acting as a government agent within the meaning of *Massiah* and the Sixth Amendment. *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

Saunders was initially released pursuant to his plea agreement with the government. After his re-arrest on the aggravated assault charge, however, when he was incarcerated at D.C. Jail in the same cellblock as West, there is no evidence that Saunders was asked by any law enforcement agent to talk to West, or was paid any money for the conversations he had. There is no evidence that Saunders was placed in jail so as to have contact with West or anyone else. Saunders' actions as an informant for the FBI took place exclusively after his release on his drug charges and before he was re-incarcerated on the assault charge. Saunders "was in jail solely because of his own misadventure; he was not there in order to gain information about [West] or any other prisoner, and he was neither instructed nor authorized to do so." *Watson, supra,* at 1348. There is no evidence in the record to show that Saunders was acting as a government agent rather than simply on his own initiative; thus West's confession was not elicited in violation of his Sixth Amendment rights. We agree with the trial court's conclusion that West cannot show that there is any probability that the result of his trial would have been different.

## VIII. PFCV Convictions

■■■■■ West argues that the two counts of possession of a firearm during a crime of violence merge. We have held that multiple counts of PFCV merge when only one gun was used and the incidents were not separated by time and location. *Nixon v. United States*, 730 A.2d 145, 153 (D.C.), *cert. denied,* 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999). Under the facts of this case, the *Nixon* rule, based on an application of the rule of lenity, requires that the two PFCV counts merge into one. *Id.* The government does not contest this result.

For the foregoing reasons, the judgment of conviction appealed from hereby is affirmed, except that the case is remanded to the trial court to vacate the conviction of one of merged offenses and for re-sentencing.

*So ordered.*